RAQUEL M. BUSANI, No. 323162
raquel@erisalg.com
ROBERT J. ROSATI, No. 112006
robert@erisalg.com
ERISA Law Group LLP
6485 N. Palm Ave.,
Fresno, California 93704
Telephone: 559-478-4119
Facsimile: 559-478-5939

Attorneys for Plaintiff,
ROBERTA SILVA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ROBERTA SILVA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>FEDERAL EXPRESS CORPORATION LONG TERM DISABILITY PLAN; FEDEX TRADE NETWORKS TRANSPORT & BROKERAGE, INC.<br><br>　　　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT** |

Plaintiff, ROBERTA SILVA ("Plaintiff" or "Silva") alleges as follows:

## JURISDICTION

1.　　Plaintiff's claims for relief arise under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (a)(3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2.　　Venue is proper in the Northern District of California because Plaintiff was and is a resident of the City of Hayward, in the County of Alameda, California, when Defendant

terminated her long-term disability benefits and denied her appeal of that decision.  Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this Court.  Intradistrict venue is proper in this Court's San Francisco/Oakland Division.

**PARTIES**

3.      Plaintiff  is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Defendant Federal Express Corporation Long Term Disability Plan ("FedEx LTD Plan"), and thereby entitled to receive benefits therefrom.  Plaintiff is a participant because she was an employee of FedEx Trade Networks Transport & Brokerage, Inc. ("FedEx Trade Networks"), which is one of the parties which established The FedEx LTD Plan to provide LTD benefits to its employees.

4.      Defendant The FedEx LTD Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.  The FedEx LTD Plan is self-funded by the Federal Express and other sponsoring employers, including Silva's employer.

5.      Defendant, FedEx Trade Networks Transport & Brokerage, Inc. ("FedEx Trade Networks"), is one of the parties that established and sponsored The FedEx LTD Plan, was Silva's employer, and is a corporation incorporated in the State of New York, with its principal place of business in Buffalo, New York.

**FIRST CLAIM FOR RELIEF**
(For Declaratory Relief That Plaintiff Is Entitled to LTD Benefits–
Against Defendant the FedEx LTD Plan, Only)

6.      Plaintiff incorporates by reference Paragraphs 1 through 4 of this Complaint.

7.      Federal Express Corporation entered into an agreement with Aetna Life Insurance Company ("Aetna") to act as claim and appeals administrator as to benefits determinations for The FedEx LTD Plan and Aetna is designated as its "Claims Paying Administrator" in the FedEx LTD Plan document, as amended and restated effective January 1, 2017.  As relevant here, Aetna was delegated authority to exercise discretion on behalf of The FedEx LTD Plan, to administers LTD claims and to decide LTD appeals, while The FedEx LTD Plan remained ultimately responsible for funding LTD benefits.

A.      Plaintiff is informed and believes, based on Aetna's June 26, 2018, letter to the Securities and Exchange Commission regarding File No. 001-16095, and thereon alleges, that prior to Silva's claim Aetna completed the sale of its domestic group life insurance, group disability insurance and absence management businesses to Hartford Life and Accident Insurance Company ("Hartford") and, pursuant to that sale transferred to Hartford, effective January 1, 2018, "all employees supporting the divested businesses."

B.      In the Plan document, as amended and restated effective April 1, 2020, which otherwise does not apply to Silva's claim, it is noted that the "Claims Paying Administrator," effective April 1, 2020, "shall mean Hartford Life and Accident Insurance Company ("Hartford").  Silva, therefore, is informed and believes that "Claims Paying Administrator" duties were delegated to Hartford effective April 1, 2020.

8.      The FedEx LTD Plan document provides long disability benefits after 26 weeks elimination period.

9.      The FedEx LTD Plan document includes the following terms:

A.      **Claims Paying Administrator** is defined in Section 1.1(e) of The 2020 FedEx LTD Plan as: "Shall mean Aetna Life Insurance Company or any other entity or person designated as such by the Company. *Also see* Paragraph 7.B.

B.      **Disability or Disabled** is defined in Section 1.1(l) of the FedEx Plan document as:

> "Disability or Disabled shall mean either an Occupational Disability or a Total Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms. In the absence of significant objective findings, conflicts with managers, shifts and/or workplace setting will not be factors supporting disability under the Plan."

C.    **Occupational Disability** is defined in Section 1.1(w) of The Plan document as:

> "Occupational Disability shall mean the inability of a Covered Employee, because of a medically- determinable physical or functional impairment or a medically determinable Mental Impairment (other than an impairment caused by a Chemical Dependency), to perform the duties of his Regular Occupation. An Occupational Disability commences on the date the Covered Employee is unable to perform the duties of his Regular Occupation. Occupational Disability shall include a natural physical deterioration which impairs a Covered Employee's ability in connection with his duties in the operation or maintenance of an aircraft, vehicle or any other such equipment requiring licensing for its operation or maintenance and which results in the revocation of such license and denial of restoration thereof."

D.    **Regular Occupation** is not defined in the 2017 LTD Plan.

E.    **Total Disability** is defined in Section 1.1(jj) of the FedEx LTD Plan document as:

> "Total Disability shall mean the complete inability of a Covered Employee, because of a medically determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week."

E.    **Proof of Disability** is defined in Section 5.1 of the FedEx LTD Plan document as:

> "Proof of Disability. No Disability Benefits shall be paid under the Plan unless and until the Claims Paying Administrator has received the Covered Employee's application for benefits and information sufficient for the Claims Paying Administrator to determine pursuant to the terms of the Plan that a Disability exists. Such determination shall be made in a fair and consistent manner for all participants in the Plan, and in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. Such information may, as the Claims Paying Administrator shall determine, consist of a certification from the Employee's attending Practitioner in the form prescribed by the Claims Paying Administrator, information in the form of medical narrative reports, pathology reports, x-rays and any other medical records or other information as may be required by the Claims Paying Administrator. In addition, a Covered Employee may be required, as the Claims Paying Administrator shall determine, to submit continuing proof of Disability in the form of the information described above, as well as evidence that he continues to be under the care and treatment of a Practitioner during the entire period of Disability. If, in the opinion of the Claims Paying Administrator, the Practitioner selected by the Covered Employee cannot substantiate the Disability for which a claim is being made or benefits are being

paid hereunder, such Employee may be required to submit himself to an examination by a Practitioner selected by the Claims Paying Administrator. The burden of proof for establishing a disability is on the Covered Employee."

F.      Section 5.3(c) of the FedEx LTD Plan document states, in part:  "Decision on Review.  The Claims Paying Administrator shall conduct reviews of denial of benefits and provide the claimant with notice of the decision reached by the Claims Paying Administrator."

G.      Section 5.3(d) of the FedEx LTD Plan document grants authority to construe and interpret The FedEx LTD Plan, determine eligibility, and decide all questions of eligibility for benefits under The Plan document to the "Administrator."  The "Administrator" / "the company" is Federal Express Corporation pursuant to Sections 1.1(c) and (3) of The FedEx LTD Plan document.

H.      Section 4.3(d) of the FedEx LTD Plan document empowers the Claims Paying Administrator to interpret The FedEx LTD Plan's provisions with respect to matters relating to eligibility of a claimant for benefits under The FedEx LTD Plan, which states, "The Claims Paying Administrator, subject to the requirements of the Code and ERISA, be empowered to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. The determination of the Claims Paying Administrator shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the individual's or committee's decision was arbitrary and capricious."

10.    Silva:

A.      Is, at all relevant times, and was a "Covered Employee" as the term is defined by the FedEx LTD Plan document; and

B.      Is, and at all relevant times hereto, was under the direct care and treatment of one or more "Practitioners," as that term is defined by The Plan document; and

     C.     Timely submitted to Hartford her application for LTD benefits.

11.     Silva was employed by FedEx Trade Networks as an ECO Manager at the time she became disabled. In her role as an ECO Manager, Silva' duties included:

> To plan, organize and control the input, movement, processes/sort, and output of the operations to ensure a high level of service. Provides leadership and direction promoting the people-service-profit philosophy as well as encouraging the growth and development of team members. Manages all other necessary activities, which provide optimum service to customers.
>
> Responsible for selecting, training, motivating, and developing a staff consisting of direct and indirect reports. Responsible for a revenue and payroll budget according to divisional needs. Implements effective business tactics and strategies to ensure the operations produce quality services to customers. Ensures cost effectiveness of operations through established control of equipment, utilities, supplies, overtime hours, and a timely quality output to avoid monetary penalties and/or customer dissatisfaction. Maintains contact with customers (internal and external) with regard to conditions affecting the service level of area served. Provides support for and participates in the design, development, implementation, and follow-up of projects related to customer service (internal and external) and support. Establishes team as well as individual goals on quality and productivity. Controls movement and activities to instill a service-conscious attitude, and minimize service failures. Ensures corporate security policy as well as safety methods and programs are implemented, maintained and adhered to. Conducts meetings to provide employees with information regarding division/operation; applies consistent administration of disciplinary procedures. Maintains accurately all required reports, paperwork, payroll, vacation schedules, performance reviews and personnel record statistics through established company policy guidelines. Enforces company policies and procedures to ensure compliance with customs and related laws and regulations. Identifies training requirements and trains, coaches, and counsels team members.
>
> This position requires strong basic management, human relations and communication (written and verbal) skills. General knowledge of safety awareness within an operational division. 4-Year degree preferred/ equivalent in business and minimum of five (5) years experience in the field/ industry. Minimum of 1 year in a leadership role. Individual customs broker's license is preferred.

12.     Silva last worked on February 19, 2019, at which time she ceased working due to disability and thereafter applied for Short Term Disability benefits from the FedEx STD Plan.

<u>SILVA'S STD CLAIM</u>

13.     On May 13, 2019, Aetna approved STD benefits for Silva, with a "Benefit Begin Date" of March 1, 2019, finding that objective/clinical findings supported ongoing disability.

Silva was thereby granted STD benefits effective March 1, 2019, and paid STD benefits through June 16, 2019.

14.    By letter dated June 25, 2019, Aetna, on behalf of The STD Plan, terminated Silva's STD benefits.

15.    By facsimile dated July 9, 2019, Silva appealed the termination of her STD disability benefits.

16.    By letter dated December 17, 2019, Hartford denied Silva's appeal of the termination of her STD benefits.

17.    Silva thereafter filed suit.  The FedEx STD Plan thereafter reinstated and paid the balance of Silva's STD benefits in July 2020.

18.    Once Silva had been paid the balance of the STD benefits for which she was eligible, she then met all the requirements for her to apply for LTD benefits from the FedEx LTD Plan.

<u>SILVA'S LTD CLAIM</u>

19.    By letter dated July 8, 2020, Hartford wrote Silva, in part, "we recommend that you now begin the process for filing for long term disability (LTD) benefits.  You must complete and return your LTD forms.

20.    Pursuant to the July 8, 2020 letter, Silva timely completed and returned to Hartford the required forms to apply for LTD benefits from the FedEx LTD Plan.

21.    By letter dated August 10, 2020, Hartford notified Silva that, "Your claim for disability benefits beginning 8/30/2019 has been reviewed.  Based on our review, your claim has been denied."  The letter further stated, "Our review determined that we have not received sufficient information providing evidence of impairment that would preclude you from performing the duties of your own sedentary physical-demand-occupation. . . Therefore, no benefits will be authorized for this claim."  The letter further stated, "Specifically, the medical information does not show significant objective findings, nor have we received medical information to determine, pursuant to the terms of the Plan, that a Disability exists."  The letter invited Silva to submit an appeal within 180 days.

22.     By letter dated January 27, 2021, Silva timely submitted her appeal from the denial of her LTD benefits.  The letter is 75 pages in length.  The appeal was supported by Silva's declaration, updated medical records, other medical information, and information concerning Silva's STD claim.

23.     By letter dated February 17, 2021, Hartford acknowledged receipt of the appeal and also explained that the applicable plan for Silva was the 2017 Plan because "Ms. Silva's date of disability was in 2019 and proceeds the amended April 1, 2020 Plan.  Hartford also sent the correct, 2017 Plan to Silva.

24.     By letter dated February 23, 2021, Silva, through counsel, acknowledged receipt of Hartford's February 17, 2021, letter, thanked Hartford for providing the correct plan document, and noted that there were differences between the terms of the 2017 and the 2020 plan documents, describing corrections to the appeal letter.

25.     By letter dated March 9, 2021, Hartford notified Silva, through counsel, that it needed more time to decide her appeal.

26.     By letter dated March 9, 2021, Hartford submitted to Silva, through counsel, the opinions of its reviewing doctors obtained in the course of its appeal review and invited a response.

27.     By letter dated March 18, 2021, Silva, through counsel, timely responded to the medical reviews provided to her counsel.

28.     By letter March 31, 2021, Hartford notified Silva that it needed more time to decide her appeal.

29.     By letter dated April 6, 2021, Hartford notified Silva that "We've completed our review of the appeal… We've overturned the original decision to deny [the] claim."

30.     By letter dated April 8, 2021, Hartford informed Silva that, "We reviewed your Long Term Disability (LTD) claim and approved your benefits starting 8/21/2019. [sic]  Benefits continue as long as you meet the definition of disability and other terms of the policy."  That letter erroneously quoted the definition of disability from the April 1, 2020 Plan.

31.     By letter dated April 19, 2021, Silva through counsel, notified Hartford that its

April 8, 2021, letter quoted the wrong plan provisions (it quoted the 2020 plan documents) and definition of disability.

32.     By letter dated April 29, 2021, Hartford notified Silva, through counsel, that "Your claim for disability benefits beginning 08/30/2019 has been reviewed.  It has been determined that no benefits are payable to you for this claim beyond 12/22/2019.  I have confirmed that you are retired from Federal Express effective 12/23/2019 as you are no longer considered a permanent full-time employee, your Long Term Benefits are not payable beyond 12/22/2019."  The letter quoted Section 2.2(b) and a portion of Section 3.3(b)(6) of the Plan document and invited Silva to appeal again.

33.     Hartford requested information regarding California State Disability Insurance benefits Silva received.  By letter dated May 4, 2021, Silva provided that information showing that Silva's SDI benefits were exhausted on February 19, 2020.

34.     By letter dated October 12, 2021, Silva appealed the termination of her LTD benefits.  That appeal asserted as follows:

A.     First, Hartford has now recognized that Silva is medically and vocationally qualified for LTD benefits.  They only remaining issues are whether Silva is a "covered employee" and whether her 2019 retirement services as a cut-off of her LTD benefits.  Silva is a covered employee and her retirement is irrelevant to her entitlement to LTD benefits.

B.     Second, contrary to the analysis in the April 29, 2021, letter, Section 2.2(b) of the Plan document is inapplicable: by its express terms, it applies to coverage under the Plan, not entitlement to benefits if the employee became disabled while covered.

C.     Third, the analysis in the April 29, 2021, letter fails to address the controlling portion of Section 3.3(b)(6) of the Plan document.  Section 3.3 (b)(6) states "The disability benefits shall cease to be paid upon the termination of the employee's employment status - - the portion cited in the April 29, 2021, letter; but also provides: "however, if such termination is due to his failure to provide information requested by the

Claims Paying Administrator concerning his Disability and, after such termination he provides the requested information within the time provided in Section 5.3 hereof and the Administrator, or the committee…finds such information to be sufficient to support his claim for disability benefits, then payment of Disability Benefits shall be reinstated without regard to his Employment Status.   In this case, only, a former Employee shall continue to receive Disability Benefits from the Plan despite such former Employee's lack of a current employment relationship with the employer."  The "however" portion, quoted above, controls here and dictates payment of continuing LTD benefits.

D.     Silva was employed and was a covered employee when she became disabled.  At that time, she applied for STD benefits.  When those benefits were terminated and when her request for medical leave was denied, Silva was instructed by letter dated July 16, 2919, from her employer to return to work or to resign and was informed, "In addition, you may file a benefit appeal within 180 days from the date of denial of your disability benefits.  If your benefits are reinstated, your employment will be reinstated to the appropriate medical leave of absence."  A true and correct copy of that letter is attached hereto as Exhibit "A."

E.     Silva's benefits were not initially reinstated.  By letter dated December 17, 2019, Hartford denied Silva's STD benefits appeal.  So, by letter dated December 23, 2019, from her employer, Silva was terminated (and so she therefore retired).  Silva then filed suit and her STD benefits were subsequently paid.

F.     Upon the granting of Silva's STD benefits, Silva should have been restored to medical leave status, as promised in the July 16, 2019, letter. (Exhibit "A.") Noting that she was not, she again demanded reinstatement.

G.     After her STD benefits were fully paid, Silva initiated her claim for LTD benefits.  Her claim was initially denied, but by letters dated April 6 and 8, 2021, her appeal was granted, but by letter dated April 29, 2021, her benefits were terminated effective December 22, 2019, due to her termination/retirement.  As stated, that conclusion is wrong.

H.      By letter dated August 10, 2020, The Hartford – the claims paying administrator – notified Silva that her claim for LTD benefits was denied because "we have not received sufficient information providing evidence that would prevent you from performing your own sedentary – physical - demand level occupation. . . ."

I.      Silva submitted, and Hartford ultimately found that the information submitted was sufficient to support her claim for disability benefits.  Therefore, the fact that Silva requested retirement because she was denied disability benefits does not preclude her from receiving disability benefits.

J.      This is also clear from Section 3.6 of the Plan document, which states that the amount of benefits a disabled employee receives shall be reduced by other disability income or benefits received under the Plan including (6) any benefits received under any retirement plan (with exceptions not applicable here) to which the employer contributes. Obviously, a person receiving benefits under a retirement plan to which FedEx Trade Networks contributes may also receive disability benefits simultaneously.

K.      Contrary to the analysis in Hartford's April 29, 2021, letter, while coverage under the plan automatically terminates when the employee ceases to meet the definition of an eligible employee, Section 2.2, coverage and entitlement to benefits are different.

        i.      Section 1.1(j) of the Plan document defines coverage as "an eligible employee who becomes covered by the Plan as provided in Section 2.1."

        ii.     Section 1.1(o) of the Plan document defines eligible employee as an employee engaged in permanent full-time employment with a participating employer, with exceptions, and also explains that a permanent full-time employee who is on an personal leave of absence or unapproved leave of absence (for an illness or injury) for which a claim for benefits has been denied by the claims paying administrator shall not be an eligible employee unless the employee is eligible for an approved leave of absence under FMLA.

L.      Silva was an eligible covered employee while working and while

receiving STD benefits.

M.     Under Section 2.1 of the Plan document, Silva was automatically a covered employee after completing 180-days of permanent employment – years ago.  She ceased to be a permanent full-time employee on the date of her retirement.  Section 2.2(b) of the Plan document.

N.     Silva was a covered employee when she became disabled.  Therefore, under section 3.3 of the Plan document that disability "shall commence to accrue on the day following the conclusion of all benefits payable under the STD plan.

O.     Silva was terminated from employment because she was denied disability benefits.  Therefore, once the claims paying administrator (Hartford) determined Silva was entitled to those benefits "payment of disability benefits shall be reinstated without regard to [her] employment status."  Plan document Section 3.3(b)(6).

P.     Independent of Silva's right to have had her employment status reinstated or whether it is ever reinstated, former employees are entitled to receive LTD benefits under the circumstances presented here.  Silva's termination/retirement was directly caused by Hartford's erroneous determination by letter dated December 17, 2019, to deny Silva's appeal of the termination of her STD benefits because Hartford erroneously concluded Silva failed to provide information. . . objective medical findings. . . concerning her disability.

Q.     Hartford subsequently agreed that Silva had provided the required objective medical findings, paid remaining STD benefits and then paid some LTD benefits, Therefore, Silva's LTD benefits are properly payable despite her lack of a current employment relationship.

R.     This is further explained by the SPD, at page 226, which also explains that Employees who are permanently unable to perform the essential duties of their own job and cannot find another job within 90 days, will be terminated but will also be paid the value of the remaining benefit for the employee's 24-month occupational disability, as follows:

"**Permanent Restrictions, Limitations and Lump-Sum Payments**

FedEx policy requires you to look for a job within FedEx if Aetna determines that you are not totally disabled, but:

➢ You have permanent restrictions and limitations from an illness or injury, and

➢ You are expected to be permanently unable to perform the essential duties of your job.

You must look for a job within FedEx during the 90 days after Aetna's determination. During that 90-day period, FedEx will make sure that all requests for reasonable accommodations are considered for your job placement. If you have permanent restrictions and limitations that prevent you from returning to work in your regular job, you are not eligible for TRW. During the 90-day job search period, you should focus on finding a position within your permanent restrictions and limitations.

If you have not found a job within 90 days, your employment will be terminated and the LTD Plan will pay you a lump-sum benefit. This benefit is equal to the present value of the remaining benefits available for your 24-month occupational disability. The lump-sum payment is less than the total benefits that would have been paid to you, because it is paid in advance rather than monthly, over time.

You may voluntarily resign any time during the 90-day period. If you do so, Aetna will make the lump sum payment in the next scheduled LTD payment cycle. See your manager, Human Capital Management Program (HCMP) manager or Human Resources Department for details about job placement, time limitations and employment status. Refer to the FedEx Express People Manual or your employer's human resource manual or handbook for complete details."

35. By letter dated January 6, 2022, Hartford denied Silva's second appeal. That letter quoted a portion of Section 3.3 of the Plan document and explained that "We confirmed

with FedEx Corporation that Ms. Silva's employment status remains terminated due to retirement. There is no indication that her employment is going to be re-instated. (¶)  Under the FedEx Long Term Disability plan, benefits cease effective the date an individual's employment status terminates.  Based on the information presented for review, Ms. Silva's Long Term Disability claim will be maintained in terminated status as outlined under the Duration of Benefit provision.  As Ms. Silva's employment status ceased effective December 23, 2019, her long-term disability benefits ceased with no benefits paid beyond December 22, 2019."

<u>THE FEDEX LTD PLAN ABUSED ITS DISCRETION</u>

36.     Hartford's decision and its interpretation of the Plan document in its January 6, 2022, letter are both arbitrary and capricious.  Contrary to Hartford's decision and its interpretation of the Plan document, the fact that Silva's employment status ceased effective December 23, 2019, did not mean that her long term disability benefits ceased and that no benefits were payable beyond December 22, 2019.

A.     Hartford's January 6, 2022, appeal denial letter did not address or consider Silva's assertion that even as a non-employee, she was entitled to certain LTD benefits.

B.     By virtue of Hartford's failure to address Silva's assertion that even as a non-employee she is entitled to certain LTD benefits, The FedEx LTD Plan cannot assert any defense to that issue and thereby conceded the point.

C.     In fact, the Plan document explicitly recognizes that LTD benefits are payable to persons not currently in "employment status" with a participating employer under The FedEx LTD Plan.  Specifically, the following sections of the Plan document recognize that after the termination of an employee's "employment status" that person can continue to receive LTD benefits from the FedEx LTD Plan:

- Section 3.3(b)(6);
- Section 3.3(c) : "upon the termination of employment status shall be paid a lump sum present value payment…";
- Section 3.4(d)(6); and

• Section 3.6(a)(6): benefits under any retirement plan, with exceptions to which the employer contributes reduce the disability benefit. [Obviously, if the amount of retirement benefits can reduce the LTD benefits, then a retired employee is eligible to receive LTD benefits.]

D. The 2018 Summary Plan Description at page 226, thereof, also explains that, "FedEx policy requires LTD claimants to look for a job within FedEx, if Aetna, now Hartford), determines that the claimant is not totally disabled. If the claimant has not found a job within 90 days, your employment will be terminated, and the LTD plan will pay you a lump-sum benefit. This benefit is equal to the present value of the remaining benefits available for your 24-month occupational disability. If the lump-sum payment is less than the total benefits that would have been paid to you, because it is paid in advance rather than monthly, over time.

You may voluntarily resign any time during the 90-day period. If you do so, Aetna [now Hartford] will make the lump sum payment in the next scheduled LTD payment cycle… Refer to the FedEx Express People Manual or your employer's human resource manual or handbook for complete details."

37. The FedEx LTD Plan's denial of Plaintiff's long disability benefits was thus arbitrary and capricious, an abuse of discretion and in violation of the terms of The Plan document.

38. Silva has performed all conditions precedent required to be performed on her part.

39. Plaintiff has exhausted all administrative remedies required to be exhausted by the terms of The FedEx LTD Plan and by ERISA.

40. At all times mentioned herein Plaintiff was, and continues to be, occupationally disabled under The Plan's definition of "occupational disability" and therefore entitled to occupational disability benefits under the terms of The FedEx LTD Plan for the period from December 23, 2019, when those benefits ceased, through August 29, 2021.

41. ERISA section 503, 29 U.S.C. section 1133 provides:

"In accordance with regulations of the Secretary, every employee benefit

plan shall–

(1)     provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and

(2)     afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

42.     Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C. §1133 and its implementing Regulations.  Specifically:

A.     29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendants herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.     The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, including Defendant, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.     Such procedures comply with the specifications of the Regulations.

ii.     The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

iii.     Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons

for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.     The plan is required to provide a full and fair review of any adverse determination which includes:

a.     That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

b.     A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon

in making the benefit determination.

        c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

        d.      The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

        e.      The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

        f.      The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the  subject of the appeal nor the subordinate of any such individual.

      43.      Hartford did not comply with ERISA's regulations.  29 C.F.R. § 2560.503-1(h)(2)(iv) requires the review "provide for review that takes into account all comments documents, records, and other information submitted by the claimant relating to the claim. . . ."

      44.      Defendant denied Plaintiff a full and fair review of her claim for benefits as follows:

        A.      Hartford did not consider all comments and documents submitted in support of Plaintiff's appeal from the termination of her LTD benefits.  Specifically, her

arguments set forth in Paragraph 34, that even as a non-employee, she is entitled to 24 months of LTD benefits through August 29, 2021.

        **B.**     **Hartford otherwise violated the Regulations.**

45.     An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under The Plan.

46.     Plaintiff contends, and the FedEx LTD Plan disputes, that Plaintiff is entitled to LTD benefits under the terms of the Plan document for the period from December 23, 2019 through August 29, 2021, because Plaintiff contends, and Defendant The FedEx LTD Plan disputes, that Plaintiff, under the plain terms of the Plan document, the termination of plaintiff's employment and her lack of employment status does not preclude Plaintiff from recovering LTD benefits, but instead only limits those benefits to 24 months of benefits, unless Plaintiff's employment status is reinstated, in which case Plaintiff could be entitled additional benefits.

47.     Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant FedEx LTD Plan is obligated to pay occupational disability benefits to her, retroactive to the first day her benefits were terminated (December 23, 2019), through August 29, 2021.

48.     A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

49.     As a proximate result of Defendant The FedEx LTD Plan's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The FedEx LTD Plan. Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

**SECOND CLAIM FOR RELIEF**
**(For Other Equitable Relief Against Defendant FedEx Trade Networks Transport & Brokerage, Inc.)**

50.     Silva incorporates by reference Paragraphs 1 through 49 of this Complaint.

51.     Pursuant to the July 16, 2019, letter from her employer, (Exhibit "A"), once Silva's STD benefits were reinstated in July 2020 (*see* ¶¶ 17-19), pursuant to Exhibit "A," Silva's "employment will be reinstated to the appropriate medical leave of absence."

52.     29 U.S.C. Section 1132(a)(3) authorizes a participant or beneficiary of an ERISA plan, such as Silva, to bring a civil action to enjoin any act or practice which violates any provision of subchapter 1, 29 U.S.C. Section 1101-1191, or the terms of the plan, or to obtain other appropriate equitable relief to address such violations or to enforce such provisions of subchapter 1 or the terms of the plan.

53.     Silva participated in statutory protected activity: she participated in the Fed Ex STD and FedEx LTD plans and pursued benefits under both plans.

54.     Silva's employer, FedEx Trade Networks, took an adverse employment action against her: it failed and refused to reinstate her employment status to that of on an appropriate medical leave of absence in July 2020, after the FedEx STD plan agreed to pay and did pay all STD benefits, contrary to its employment policies and practices and is contrary to its representations in its July 16, 2019, letter to her.  (Exhibit "A".)

55.     Silva's employer, FedEx Trade Networks, refused to reinstate Silva to the proper medical leave absence employment status for the purpose of interfering with Silva's right to become entitled to benefits under the FedEx LTD Plan and/or in retaliation for her pursuit of STD benefits and LTD benefits under the FedEx plans.

56.     Silva is informed and believes and thereon alleges that Silva's employer, FedEx Trade Networks, refused to reinstate her employment status, as promised in Exhibit "A," and as consistent with its usual policies and practices, due to a specific intent to interfere with Silva's right to obtain LTD benefits from the FedEx LTD Plan.

57.     Silva's employer, FedEx Trade Networks violated ERISA Section 510, 29 U.S.C. Section 1140, by failing to reinstate Silva's employment status to the appropriate medical leave of absence status when Silva's STD benefits were granted and paid in July 2020, as required by its usual policies and policies and its representation to Silva in the July 16, 2019, letter.  (Exhibit "A".)

WHEREFORE, Plaintiff prays judgment as follows:

1.      For declaratory judgment against Defendant, the FedEx LTD Plan, requiring Defendant The FedEx LTD Plan to pay Silva "occupational disability" benefits under the terms of the FedEx LTD Plan for the period from December 23, 2019, through and including August 29, 2021.

2.      For a declaratory judgment requiring FedEx Trade Networks Transport & Brokerage, Inc. to reinstate Silva's employment status to employed with the appropriate medical leave of absence status effective December 23, 2019 and rescind her resignation.

3.      For a declaratory judgment requiring The FedEx LTD Plan to accept and consider Silva's application for "Total Disability" benefits under the FedEx LTD Plan for the period beginning August 30, 2021, once Silva's employment status is reinstated.

4.      For attorney's fees pursuant to statute against both Defendants.

5.      For costs of suit incurred against both Defendants.

6.      For interest on unpaid benefits.

7.      For such other and further relief as the Court deems just and proper.

Date: April 14, 2022

   _/s/ Robert J. Rosati_
   Robert J. Rosati, Esq.

   *Attorney for Plaintiff, ROBERTA SILVA*